**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| Peter Kenney, | ) | **CASE NO. 1:04 CV 2194** |
| | ) | |
| Petitioner, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| vs. | ) | |
| | ) | |
| James Haviland, Warden, | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| Respondent. | ) | |


<u>**INTRODUCTION**</u>

Petitioner, Peter Kenney, commenced this action with the filing of a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Kenney is incarcerated after a jury trial in the Cuyahoga County Court of Common Pleas. This matter has been fully briefed and Magistrate Judge David S. Perelman issued his Report and Recommendation (Doc. 28) recommending that the Petition for Writ of Habeas Corpus be denied. Kenney has filed Objections to the Report and Recommendation. For the following reasons, the Report and Recommendation is ACCEPTED.

<u>**FACTS**</u>

Timmon Black testified that he awoke to gunshots at about 4:00 am on April 17, 2001.

The gunshots came from the backyard of a neighbor, Renee McBride.  McBride testified that she heard two gunshots, followed by the sound of Terrence Robinson crying for help, followed by four more gunshots.  Mr. Black said that he saw two men standing to the side of Robinson when a third man approached and shot him from a foot away.  Black identified the shooter as a short, white male.

When police arrived at the scene they found Robinson face down and dressed only in his underwear with his other clothing strewn near his body.  He had been shot seven times.  The first six shots immobilized Robinson but were not fatal.  The fatal wound was to the top of Robinson's head and was from approximately 12 inches away.

Petitioner Peter Kenney is a white male who goes by the nickname of "Shorty."  The police eventually came to suspect that Kenney was involved in the homicide, but were unable to find him until May 5, 2001, when he indicated his desire to surrender to the police.  Kenney was charged with two counts of aggravated murder, one count of aggravated robbery and one count of kidnaping, with all four counts bearing firearm specifications and the aggravated murder charges bearing two felony murder specifications.

The case was set for trial on October 15, 2001.  The trial court granted Kenney a first continuance to November 13, 2001.   On November 6, trial counsel filed a motion for a second "Continuance of Trial to Complete Investigation of Exculpatory Evidence."  Kenney's motion explained that the first court-appointed investigator had been dismissed in early October.  With the assistance of the second investigator, trial counsel had acquired evidence that another person might have confessed to the murder.  Specifically, trial counsel stated that he was attempting to interview an incarcerated individual, the prosecutor disclosed a witness on November 1, and he had interviewed a witness on October 31.  Kenney sought "a short delay in the trial" to locate

2

witnesses and investigate.  The court denied the motion.

The case proceeded to trial.  Black and McBride testified as summarized above.  Lynette Schirger also testified at trial.  Her former live-in boyfriend, Daniel Fox, and Kenney were "business associates" involved in the sale of crack on Cleveland's west side.  Schirger testified that on the night of the murder Kenney, Fox and some friends went out to get high.  When she awoke the next morning, Kenney was at her house and was still high.  Schirger testified that Kenney was "all hyped up" and told her "that he murdered the nigger and that's what he deserved."  Kenney identified the victim as "Terrence" and told Schirger that the victim was left stripped to his boxers face down in a mud hole.  Schirger became upset and told Kenney to leave.  He remarked, "if you don't believe me, watch the news."  She in fact did see the murder reported on the news, met with police and identified Kenney.  Bonnie Cozart also testified at trial.  She lived in the neighborhood and knew Kenney as Shorty.  She testified at trial that she had a conversation with Shorty two days after the murder, at which time he admitted that "[t]he kid pissed us off, so we shot him."  On the day of the murder Kenney also asked a friend to take care of Kenney's dog.

The police also received a statement from Fox two weeks after the murder.  At the time, Fox stated that Kenney came to his house hollering that the police were chasing him.  Fox allowed Kenney to come into his house but did not allow in another individual named Randy.  Fox saw Kenney hand a gun to Randy.  Kenney told Fox over and over again that "he killed the little nigger that sells dope on 95th."  He also told Fox that he stripped the victim and took his money.

3

At trial Fox testified that he and Kenney had been smoking "wet."[1]  Kenney eventually left and was so high he could barely walk.  Contrary to his earlier statement, Fox testified that Kenney returned to his house at three in the morning and that they were unaware of the murder until the next day.  In light of this testimony the prosecuting attorney questioned Fox on his prior statement.

A jury found Kenney guilty of one count of aggravated murder with a firearm specification and one count of kidnaping with a firearm specification, upon which the trial court sentenced him.

New counsel was appointed for Kenney's appeal.  Kenney filed an appeal brief on May 15, 2002, alleging two assignments of error.  The first claimed that the trial court should not have allowed the prosecutor to introduce the Fox statement.  However, trial counsel agreed to allow the statement to be introduced for impeachment only.  In light of this agreement, the Eighth District Court of Appeals overruled the first assignment of error.  The second assignment of error stated that the verdict was contrary to the manifest weight of the evidence.  The Court of Appeals disagreed and affirmed on April 7, 2003.  Kenney repeated the first assignment of error in an appeal to the Ohio Supreme Court, which declined jurisdiction of the case on September 10, 2003 as not involving any substantial constitutional question.

While his direct appeal was pending, Kenney again acquired new counsel (the Ohio Public Defender) and filed a petition for postconviction relief under Ohio Rev. Code § 2953.21 as well as a motion for new trial on July 15, 2002.  The trial court denied the motion for a new trial.  The petition for postconviction relief alleged three grounds: 1) Kenney was deprived of his

---

[1]      "Wet" or "water" apparently involves smoking items dipped in embalming fluid.

4

right to a fair trial and due process by the trial court's refusal to allow a continuance of the trial date to investigate exculpatory evidence; 2) Kenney was deprived of his right to a fair trial and due process by the State's failure to provide timely disclosure of exculpatory evidence; and 3) Kenney was deprived of his right to effective assistance of trial counsel.

All three grounds for relief were based on the following.  David Finley signed an affidavit stating that while he was incarcerated in a juvenile detention facility in Cleveland he overheard Ricardo Ruiz admit "that he (Ruiz) had been involved in the robbery and homicide of Terrence Robinson."  He provided this information to a detective and to Kenney's trial attorney during interviews.  Kenney's trial counsel confirmed in an affidavit that he conducted an interview of Finley during pre-trial investigation.[2]  Although Finley did not state so in his affidavit, trial counsel's affidavit stated that Finley told him during the interview that Ruiz referred to two accomplices named "Jimmy" and "Jeremy."  Kenney's trial counsel also states that a number of witnesses, including Black, were shown photo arrays and did not identify Kenney, and that he did not receive this information until the eve of trial.  Finally, Kenney filed an affidavit stating that Finley wrote him a letter in July 2001 which stated that Ruiz had admitted to the murder.  Kenney states that he told trial counsel of this information in September and gave trial counsel the letter in October.[3]  Kenney also stated that he received "additional information" from Finley regarding Ruiz after trial.[4]

---

[2]  This was apparently the interview trial counsel referred to in the continuance motion.

[3]  The letter is not in the record.

[4]  The record does not reveal what this "additional information" entails.

5

The state responded that the first claim was barred by *res judicata*, and that all three claims failed on the merits.  In an opinion of September 20, 2002, the trial court found the first claim barred by *res judicata* and also denied it on the merits.  The second and third claims were denied on the merits.  Regarding the merits, the court generally found that trial counsel had all of this information before trial and that none of the allegations affected guilt or innocence. Assuming that the State knew of Finley's testimony prior to trial, Kenney himself informed counsel of the substance of Finley's statement months before trial and counsel interviewed Finley two weeks before trial.  Finley's testimony about Ruiz was hearsay and even if admitted, the mere fact that Ruiz might be "involved" in the murder did not exonerate Kenney.  As for the photo arrays, trial counsel admittedly received the information on the eve of trial and could have questioned witnesses about the arrays at trial.  In any event, the array information was of little value, since the witnesses who were unable to identify Kenney admitted that they did not see the shooter's face.[5]

Kenney appealed the denial of his petition for postconviction relief and his motion for a new trial to the Court of Appeals.  The appellate court consolidated the cases for review and found that all of his claims were procedurally barred by *res judicata* in an opinion announced on April 24, 2003.  Although Kenney alleged that the affidavits of Finley, trial counsel and Kenney provided newly-discovered evidence *dehors* the record, the panel disagreed, concluding that this was "evidence in existence and available for use at the time of the trial."  Because he "could have raised these claims on his direct appeal, . . . these claims are procedurally barred by the

---

[5]     Trial counsel actually questioned Black about his inability to make an identification from the photo array.

6

doctrine of res judicata."[6]  The Court of Appeals did not address the merits.  The Ohio Supreme

Court denied review of Kenney's postconviction claim as not involving any substantial

constitutional question on September 10, 2003.

Kenney also challenged the effectiveness of appellate counsel pursuant to an application

for reopening under Ohio Appellate Rule 26(B) filed on June 13, 2003.  Kenney alleged that

appellate counsel should have made the following arguments on his direct appeal: 1) the trial

court violated Kenney's right to confront and cross-examine witnesses when it limited trial

counsel's cross examination of Schirger; 2) the trial court deprived Kenney of his right to a fair

trial by an impartial jury by refusing to replace a juror who claimed she was intimidated by a

spectator; 3) the trial court deprived Kenney of his right to a fair trial and due process of law

when it refused to grant a continuance to allow further investigation; 4) Kenney was deprived of

his right to a fair trial and due process of law by the state's failure to disclose exculpatory

evidence in a timely manner; and 5) Kenney was deprived of his right to effective assistance of

counsel at trial.  In an opinion dated March 3, 2004, the Court of Appeals considered all five

arguments on the merits, ultimately concluding that appellate counsel could properly choose not

to press these arguments on appeal.  The court also held that these claims were barred by *res

judicata*, since they were decided by the trial court in Kenney's petition for postconviction relief

and affirmed on appeal.

Kenney also alleged that appellate counsel neglected to obtain the record from his

juvenile bindover proceedings and failed to file a motion for reconsideration based on the

---

[6]     The *res judicata* bar also applied to the ineffective assistance of
counsel claim, since Kenney was represented by different counsel
on appeal.

7

appellate court's reliance on the Fox statement as substantive evidence.  The Court of Appeals found that plaintiff failed to demonstrate prejudice as to either of the latter two claims, and also noted that those claims may be beyond the scope of an application to reopen.  The Ohio Supreme Court declined to consider an appeal of the denial of Kenney's application to reopen on July 14, 2004.

Kenney filed a Petition for Writ of Habeas Corpus, raising three grounds for relief.  First, he claims that he was denied due process by the trial court's denial of his request for a continuance.  Second, he claims that his trial counsel had inadequate time to prepare, and thus was ineffective, as a result of the trial court's refusal to grant the continuance.   Third, he claims that his appellate counsel was ineffective.

### **STANDARD OF REVIEW**

The Court's review of the State courts' conclusions of fact and law is limited as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

  (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

  (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The State courts' findings of fact are presumed correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  Here, the Magistrate Judge has issued a Report and Recommendation

8

and the Petitioner has filed timely objections.  Rule 8(b) of the Rules Governing Section 2254

Cases in the United States District Courts provides as follows:

> The judge must determine *de novo* any proposed finding or recommendation to which
> objection is made.  The judge may accept, reject, or modify any proposed finding or
> recommendation.

### **DISCUSSION**

The Magistrate Judge determined that all three of petitioner's claims are procedurally

defaulted.  Federal district courts are forbidden from addressing the federal claims of state

prisoners in habeas corpus actions where the state judgment rests on independent and adequate

state law grounds.  *Wainwright v. Sykes*, 433 U.S. 72, 81-82 (1977).  This rule applies equally

when the state law ground is the failure to meet the state's procedural requirements, since the

prisoner "has deprived the state courts of an opportunity to address those claims in the first

instance."  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  The Sixth Circuit has summarized

this procedural default rule as follows:

> When a habeas petitioner fails to obtain consideration of a claim by a state court,
> either due to the petitioner's failure to raise that claim before the state courts while
> state-court remedies are still available or due to a state procedural rule that
> prevents the state courts from reaching the merits of the petitioner's claim, that
> claim is procedurally defaulted and may not be considered by the federal court on
> habeas review.

*Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000).

The Court must look to the decision of the last state court to determine whether the

procedural default was an independent and adequate state law ground.  A state law ground may

be independent even if the state court discussed the federal issues.  *Coleman*, 501 U.S. at 734-45.

In such cases, the state court must clearly and expressly rely on the state procedural bar.  *Harris*

*v. Reed*, 489 U.S. 255, 264 (1989); *Gravley v. Mills*, 87 F.3d 779, 785 n.1 (6th Cir. 1996).  The

state procedural ground must also be adequate.  "To be adequate, a state procedural rule must be

'firmly established and regularly followed by the time as of which it is to be applied.'"

*Hutchison v. Bell*, 303 F.3d 720, 737 (6th Cir. 2002) (quoting *Ford v. Georgia*, 498 U.S. 411,

424 (1991)).  If the state procedural rule is independent and adequate, the petitioner's claims are

barred by his procedural default unless he can demonstrate cause for the default and actual

prejudice as a result of the violation of federal law or that failure to consider the claims will

result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.  Accordingly, the

Sixth Circuit has formulated the four-part *Maupin* test for procedural defaults:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner
> .  Second, the court must decide whether the state courts actually enforced the state procedural
> sanction. . . .  Third, the court must decide whether the state procedural forfeiture is an "adequate
> and independent" state ground on which the state can rely to foreclose review of a federal
> constitutional claim. . . .  Fourth, [o]nce the court determines that a state procedural rule was not
> complied with and that the rule was an adequate and independent state ground, then the
> petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the
> procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Hill v. Mitchell*, 400 F.3d 308, 321

(6th Cir. 2005) (citing *Maupin*); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (quoting

*Maupin*).

Kenney's first two grounds for relief relate to the trial court's refusal to grant a

continuance and both were raised and addressed in the same manner throughout Kenney's

various pleadings.  Respondent contends that Kenney's continuance-related claims are barred by

*res judicata* because he failed to raise them on his direct appeal as required by *State v. Perry*,

226 N.E.2d 104 (Ohio 1967).[7]

---

[7]     "Typically, a claim of ineffective assistance of trial counsel should
be raised on the appellant's direct appeal."  *State v. Cowan*, 783
N.E.2d 955, 958 (Ohio App. 2002).  An exception to this

The first *Maupin* inquiry is related to the "adequate" prong of the Supreme Court's *Sykes* test.  Here, it is undisputed that *Perry* required Kenney to present his arguments on his direct appeal:

> Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at trial, which resulted in that judgment of conviction, or on an appeal from that judgment.

*Perry*, 226 N.E.2d 104, at the syllabus; *State v. Reynolds*, 679 N.E.2d 1131, 1133 (Ohio 1997).

Kenney admits that he "initially raised the first and second grounds for relief raised herein . . . in his timely filed petition for post-conviction relief" and that the first prong of the *Maupin* test is met.  (Doc. 29 at 4-5).  However, Kenney disputes that the *Perry* rule was an adequate state ground in this case.  He is correct that not all state procedural rules are adequate state grounds.  The rule must be "firmly established and regularly followed" by the state courts to be enforced.  *Ford*, 498 U.S. at 424; *Hutchison*, 303 F.3d at 737.  However, a petitioner must demonstrate more than "an occasional act of grace by a state court in excusing or disregarding a state procedural rule" to prove that the rule is not firmly established and regularly followed. *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001); *see also Dugger v. Adams*, 489 U.S. 401, 410 n.6 (1989) (explaining that a similar Florida rule was not inconsistently applied where the rule was faithfully applied in the "vast majority of cases").

Kenney's argument regarding the adequacy of the *Perry* rule is somewhat perplexing. He admits that the Sixth Circuit has held that the *res judicata* principle of *Perry* is an adequate

---

rule—when the defendant has the same counsel at trial and appeal—does not apply here.  *Id*.

11

state procedural ground.  (Doc. 29 at 7).  *See, e.g., Mitchell*, 268 F.3d at 429; *Greer v. Mitchell*, 264 F.3d 663, 673 (6th Cir. 2001); *Mapes v. Coyle*, 171 F.3d 408, 421 (6th Cir. 1999). Nonetheless, he contends that "in this case, it did not, for Mr. Kenney must have had a fair and reasonable opportunity to present his claims and he did not."  However, the mere pronouncement of this salutary principle does nothing to explain what is unfair or unreasonable about requiring a defendant to bring his assignments of error on direct appeal.

The second *Maupin* inquiry—whether the state courts actually enforced the procedural rule—is related to the "independent" prong of the Supreme Court's *Sykes* test.  Kenney first brought his first and second grounds for relief in his petition for postconviction relief.  He contends that the trial court addressed the merits of his claims in resolving his petition. However, he admits that the trial court also held that "Mr. Kenney's claim regarding defense counsel's request for a continuance was barred by the doctrine of *res judicata*, because it could have been raised in Mr. Kenney's direct appeal."  (Doc. 29 at 4).  Thus, while the trial court addressed the merits, it also clearly and expressly relied on the procedural default in denying the petition.[8]  *Harris*, 489 U.S. at 264.

Moreover, the issue is whether the *last* court to consider the claims enforced the

---

[8]      The mere existence of the clear statement rule confirms that an alternative holding on the merits cannot save a claim where the court clearly and expressly enforces a state procedural bar.  *See Coleman*, 501 U.S. at 735 ("A predicate to the application of the *Harris* presumption is that the decision of the last state court to which the petitioner presented his federal claims must fairly appear to rest primarily on federal law or to be interwoven with federal law.").  The trial court cited *Perry* and held as follows: "The Court concludes that the defendant's claim of error in this Court's denial of his second request of continuance of trial is subject to dismissal since it is a claim that could have been raised on direct appeal and is *res judicata*."

procedural default.[9]  *Harris*, 489 U.S. at 263; *Greer*, 264 F.3d at 673.  Here, Kenney admits that "[t]he state appellate court in Mr. Kenney's appeal from the denial of his petition for state post-conviction relief stated that all of Mr. Kenney's state post-conviction claims could have been raised on direct appeal, and therefore were barred by the doctrine of *res judicata*."  (Doc. 29 at 4).  Having reviewed the opinion, the Court agrees.  The Eighth District Court of Appeals relied exclusively on *res judicata* in dismissing the appeal and, thus, clearly and expressly relied on the procedural bar.

Perhaps recognizing that the courts deciding his petition for postconviction relief clearly and expressly relied on the procedural default, Kenney instead focuses on the Eighth District Court's of Appeals' denial of his application to reopen his appeal.  Kenney sought to reopen his appeal on the basis that his appellate counsel was constitutionally ineffective for failing to raise meritorious issues on appeal.  Among those allegedly meritorious issues appellate counsel failed to raise were Kenney's first two grounds of relief presented here.  In denying his application to reopen, the Eighth District reviewed the trial judge's merits analysis from the petition for postconviction for relief.  The Court concluded that "[t]he very reasoning of the judge, ruling that there was no error or prejudice on these issues, establishes that appellate counsel, in the exercise of professional judgment, could reject these arguments."  However, the Eight District also held that "[r]es judicata bars these arguments."

Finally, Kenney contends that the Ohio courts should not have applied the *res judicata* bar to his claims because he presented evidence *dehors* the record.  "The presentation of

---

[9]     When there has been a reasoned order, later unexplained orders are assumed to have adopted the reasoning of the lower court.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

13

competent, relevant, and material evidence *dehors* the record may defeat the application of *res judicata*." *State v. Lawson*, 659 N.E.2d 362, 367 (Ohio App. 1995) (citing *State v. Smith*, 477 N.E.2d 1128, 1131 (Ohio 1985)).  However, the mere attachment of an affidavit alleging new evidence is not enough:

> Evidence presented outside the record must meet some threshold standard of cogency; otherwise it would be too easy to defeat the holding of *Perry* by simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery. . . .  To overcome the *res judicata* bar, evidence offered *dehors* the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record.

*Lawson*, 659 N.E.2d at 367; *see also Ohio v. Cowan*, 783 N.E.2d 955, 958 (Ohio App. 2002).

Kenney attached three affidavits to his petition for postconviction relief.  The first affidavit was submitted by David Finley.  He averred that while incarcerated at a juvenile facility he listened in on a phone conversation between a Ricardo Ruiz and a woman named Candace. During that conversation Ruiz admitted that he was "involved" in the robbery and homicide of Terrence Robinson.  He provided this information to a Detective O'Malley and to Peter Kenney's trial attorney, Allan Rossman.  Finley spoke to Ruiz once more, at which time he again admitted that he was "involved" in the Terrence Robinson homicide.

The second affidavit was from Rossman.  He averred that he interviewed Finley on October 31, 2001, at which time Finley told him about Ruiz's conversation with Candace.  He also avers that he was advised for the first time on November 13, 2001 that Timmon Black, Renee McBride, Lynette Schirger and Bonnie Cozart had been shown photo arrays and did not identify Kenney.

The third affidavit was Kenney's.  He averred that in July of 2001 he received a letter from Finley recounting Ruiz's conversation with Candace.  Kenney told Rossman of this in early

14

September of 2001 and gave Rossman the letter in October of 2001.

The Eighth District Court of Appeals addressed these affidavits in its opinion affirming the denial of Kenney's petition for postconviction relief.  It concluded that all of the allegedly exculpatory information from the affidavits was in existence and available to the defense at the time of trial.  Kenney does not dispute this but instead quotes federal cases for the broad proposition that "potential evidence from witnesses who never appeared at trial, as well as testimony of trial counsel respecting trial tactics, is by definition *dehors* the record."  *Dempsey v. Bobby*, 412 F. Supp. 2d 720, 728 (N.D. Ohio 2005).  However, this quotation is taken out of context.  The *Dempsey* court recognized that "*res judicata* does not apply [to a] claim *which could not be fairly ruled on* without evidence *de hors* the record."  *Id.*  (emphasis added).  This is merely another way of saying that "evidence offered *dehors* the record must demonstrate that the petitioner could not have appealed the constitutional claim based upon information in the original record."  *Lawson*, 659 N.E.2d at 367.

Here, the evidence allegedly *dehors* the record was already in the record.  The affidavits address two pieces of evidence—the photo arrays and the information regarding Ruiz.  However, this same information regarding Ruiz was the reason that trial counsel brought the second motion for a continuance in the first place.[10]  Counsel and witnesses cannot avoid a procedural bar by

---

[10]    The photo arrays are not the subject of Kenney's first two grounds for relief.  Both claim that the trial court erred in refusing to grant a continuance.  However, the continuance was sought prior to the time that trial counsel became aware of the photo arrays.  Moreover, "[e]vidence presented outside the record must meet some threshold standard of cogency."  *Lawson*, 659 N.E.2d at 367.  As the trial court noted in the postconviction proceedings, two of the witnesses who failed to identify Kenney (Black and McBride) never testified that they saw the shooter's face.  The other two witnesses (Schirger and Cozart) were acquaintances of Kenney.

15

regurgitating information that was available and addressed at trial.

Accordingly, the Court concludes that petitioner's first two grounds are procedurally defaulted.  Nor has he established cause and prejudice to excuse the default as his claims for ineffective assistance of trial and appellate counsel are likewise defaulted, and he has no evidence of actual innocence to support a claim for a fundamental miscarriage of justice.

The Magistrate Judge also found the third ground for relief, the ineffective appellate counsel claim, to be barred by *res judicata*.  This Court agrees.

In ruling on petitioner's application to reopen his appeal under App. R. 26(B), the court of appeals looked to the trial court's opinion in Kenney's petition for postconviction relief.  The trial judge had addressed the merits of the same claims that Kenney argued should have been pressed on appeal.  The appellate court concluded as follows: "The very reasoning of the judge, ruling that there was no error and no prejudice on these issues, establishes that appellate counsel, in the exercise of professional judgment, could reject these arguments."  *State v. Kenney*, No. 80653, at 9 (Ohio App. 8th Dist. March 3, 2004).  Nonetheless, the appellate court continued as follows:

> Furthermore, res judicata properly bars these arguments.  See, generally, *State v. Perry* (1967) 10 Ohio St.2d 175, 226 N.E.2d 104.  Res judicata prevents repeated attacks on a final judgment and applies to all issues which were or might have been litigated.  In *Murnahan*, the supreme court ruled that res judicata may bar a claim of ineffective assistance of appellate counsel unless circumstances render the application of the doctrine unjust.  In the present case the trial judge on an expanded record fully considered each of the issues on their merits and rejected them, and this court of appeals affirmed that judgment.  Under such circumstances, it is not unjust to rule that res judicata bars the repeated litigation of these issues.

*State v. Kenney*, No. 80653 at 9-10.  The appellate court also acknowledged that "this court affirmed the decision of the trial court on the postconviction relief petition solely on the basis of

16

*res judicata*." *Id*. at n.18.   The Court finds that the foregoing language serves to bar Kenney's

ineffective assistance of appellate counsel claim.  A ruling on procedural default with an

alternative determination on the merits does not preclude a determination by a federal court on

habeas corpus that the state procedural rule was actually enforced.  *Scott v. Mitchell,* 209 F.3d

854 (6th Cir. 2000). Further, the court of appeals found the balance of the grounds asserted in

petitioner's third claim for relief herein to also be procedurally barred:

> ...Kenney raises two other issues: (1) appellate counsel was ineffective in failing to
> include the record from the juvenile court bindover proceedings, and (2) he was
> ineffective for failing to file a motion for reconsideration under App.R. 26(A). First, we
> note that these arguments may be beyond the scope of an application to reopen pursuant
> to App.R. 26(B). Subsection (2), paragraph c specifies that the basis for an application to
> reopen shall be assignments of error which appellate counsel did not argue or did not
> argue properly. Nevertheless, these issues are not persuasive, because Kenney does not
> establish prejudice.

 Accordingly, petitioner's third ground for relief is procedurally defaulted.

For these reasons, the Petition for Writ of Habeas Corpus is denied.

**<u>Conclusion</u>**

For the reasons set forth herein and for the reasons set forth in the Magistrate Judge's

Report and Recommendation, the Petition for Writ of Habeas Corpus is denied.  Further, this

Court hereby fully incorporates the Report and Recommendation by reference herein.

This Court now considers whether to grant a certificate of appealability (COA) pursuant

to 28 U.S.C. § 2253 which states in relevant part:

> \*\*\*
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may
> not be taken to the court of appeals from –
>
> > (A) the final order in a habeas corpus proceeding in which the
> > detention complained of arises out of process issued by a State
> > court . . .

17

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

In *Slack v. McDaniel*, 529 U.S. 473 (2000), the United States Supreme Court determined that

"[t]o obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "'adequate to deserve encouragement to proceed further.'"

*Id.* at 483-4 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) ).

If the claim is not procedurally defaulted, then a habeas court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong."  *Id.* at 484.  In instances where a claim is  procedurally defaulted, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* (emphasis supplied).

For the reasons stated above and in the Report and Recommendation, this Court finds no basis upon which to issue a certificate of appealability.

IT IS SO ORDERED.

 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated:  9/26/06

18